IN THE UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
SPRINGFIELD DIVISION

| | |
|---|---|
| JASON REKART, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. 11-3231 |
| ) | |
| OSAGE MARINE SERVICES, INC., ) | |
| and the M/V Deborah Ann, ) | |
| ) | |
| Defendants. ) | |

OPINION

SUE E. MYERSCOUGH, U.S. District Judge.

This cause is before the Court on Defendant Osage Marine Services, Inc.'s Motion for Partial Summary Judgment (d/e 70). Because genuine issues of material fact exist, the Motion is DENIED.

## I. INTRODUCTION

In September 2011, Plaintiff Jason Rekart filed an Amended Complaint in Admiralty and Withdrawal of Jury Demand (d/e 7). In the Amended Complaint, Plaintiff alleges causes of action sounding in general maritime law (unseaworthiness and maintenance and cure) and the Jones Act, 46 U.S.C. § 30104.

Defendant filed an Answer raising several affirmative defenses. See d/e 10. One of the defenses raised was that Plaintiff was not entitled to maintenance and cure because Plaintiff intentionally concealed and/or misrepresented material medical facts prior to his employment with Defendant. Defendant now seeks partial summary judgment on the maintenance and cure claim.

## II. JURISDICTION AND VENUE

This Court has subject matter jurisdiction because Plaintiff's claims are based on federal law. See 28 U.S.C. § 1331 ("The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States"). Venue is proper because the events giving rise to the claim occurred in Scott County, Illinois. See 28 U.S.C. § 1391(b)(2) (venue is proper in a judicial district in which a substantial part of the events giving rise to the claim occurred); CDIL-LR 40.1 (complaints arising in Scott County shall be filed in the Springfield division).

## III. LEGAL STANDARD

Summary judgment is appropriate when the pleadings and submissions in the record demonstrate there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law.

Mercatus Group, LLC v. Lake Forest Hosp., 641 F.3d 834, 839 (7th Cir. 2011). A genuine issue of material fact exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). The movant bears the burden of establishing that there is no genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). If the movant meets this burden, the non-movant must set forth specific facts demonstrating that there is a genuine issue for trial. Stephens v. Erickson, 569 F.3d 779, 786 (7th Cir. 2009). Facts must be viewed in the light most favorable to the non-moving party, and all reasonable inferences must be drawn in favor of the non-movant. See Trentadue v. Redmon, 619 F.3d 648, 652 (7th Cir. 2010).

## IV. FACTS

The Court sets forth only those facts that Defendant included in its Undisputed Material Facts and that Plaintiff set forth in his Additional Material Facts, taking into account each party's objections thereto. Defendant's motion to strike Plaintiff's Additional Material Fact No. 1 on the basis that it contains argument is denied.

On October 25, 2009, an incident occurred while Plaintiff was working for Logsdon Tug Service, Inc.  Defendant asserts that Plaintiff injured his low back on that date.  Plaintiff contends that the documents cited to by Defendant do not establish an injury to Plaintiff's low back.  The documents Defendant submitted in support show that Plaintiff "yanked [his] back out" while trying to pull a wire.  Def. Mot., d/e 70, Exhibit C.

On November 5, 2009, Plaintiff consulted with Dr. Matthew F. Gornet at the Orthopedic Center of St. Louis.  Dr. Gornet diagnosed Plaintiff with, among other conditions, a low back abnormality at L4-L5, large central disc herniation at L4-L5, and an annular tear at L5-S1.  See Stedman's Medical Dictionary 94 (32nd Ed. 2012) (defining annular as "shaped like a ring").  Plaintiff testified that he thought that Dr. Gornet told him he had spondylolisthesis, a back condition dating to his birth, and that Plaintiff had merely irritated that condition.  Dr. Gornet classified Plaintiff as unable to work from November 5, 2009 through January 5, 2010.

In January 2010, Plaintiff completed an application for employment with Defendant.  See d/e 79 Ex. B.  On September 17, 2010, as a required condition of starting his employment with Defendant, Plaintiff submitted a Confidential Medical History.  The "Notice to Employee" portion of the

Confidential Medical History form explicitly required Plaintiff to supply full and complete information and warned that any concealment could jeopardize future benefits of maintenance and cure:

> Your past medical history is important to the examining physician in trying to determine whether you are fit to perform the essential elements of the job you have been offered. Disclosure of information about your past medical history is voluntary on your part. However, if you do not supply full complete information, this could cause the examining physician to make an erroneous determination, which could be detrimental to the health or safety of you or your co-workers. Also, if you conceal information about a prior injury, physical problem[,] or other condition, which you might experience during the course of your employment, and [sic] could also jeopardize your right to receive maintenance payments during your medical recover[y]. We therefore urge you to supply full and complete information on this form. The furnishing of false or misleading information may be grounds for immediate discharge.
>
> All information supplied on this form will be kept confidential by Osage Marine and will be used by the <u>examining physician alone</u> in determin[ing] whether you are fit to perform the essential elements of the job you have been offered.

Def. Mem., d/e 71-8, Ex. H (emphasis in original). Plaintiff acknowledged and signed the "Notice to Employee," indicating that he decided to voluntarily complete the Confidential Medical History form.

The first question on the Confidential Medical History form asked, "Have you ever been injured?" to which Plaintiff answered, "No." Question

3 on the medical history form asked, "Do you have any physical, mental, or other medical impairment, condition, or disability that might limit your performance of the job offered?" to which Plaintiff answered, "No."

As part of Defendant's hiring process, Dr. Chris Wagoner, a physician hired by Defendant, performed a physical examination of Plaintiff to determine whether he was capable of performing the essential elements of a deckhand, the job for which Plaintiff applied.  Plaintiff completed the Health History portion of the pre-employment Medical Examination Report for Commercial Driver Fitness Determination.  Plaintiff placed an "X" in the box signifying "No" next to the line that read, "Spinal injury or disease" and "Chronic low back pain."

The physical examination included back X-rays.  Three views of the lumbar spine were obtained.  The X-ray report reflects the following:

> There is no fracture.  Vertebral body heights are well maintained.  There is mild retrolisthesis at the L3-4 Level and mild anterolisthesis at the L4-5 level.  Probable pars defects at the L4 level.  Oblique views or a CT could be obtained to definitively evaluate this.  There is significant loss of the intervertebral disk space height at the L4-5 level.  There is minimal retrolisthesis at the L5-S1 level.
>
> IMPRESSION:  Degenerative changes at the L4-5 level with listhesis at the L3-4 and L4-5 level, possibly secondary to pars defects at the L4 level.

See Dorland's Illustrated Medical Dictionary 1636 (32nd Ed. 2012) (wherein retrolisthesis is defined as retrospondylolisthesis, which is in turn defined as the "posterior displacement of one vertebral body on the subjacent body"); Dorland's Illustrated Medical Dictionary 98, 1754 (32nd Ed. 2012) (wherein anterolisthesis is defined as spondylolisthesis, which is in turn defined as the "forward displacement (olisthy) of one vertebra over another, usually of the fifth lumbar over the body of the sacrum, or of the fourth lumbar over the fifth, usually due to a developmental defect in the pars interarticularis").

On September 17, 2010, Dr. Wagoner completed a Report of Pre-Placement Physical Examination finding Plaintiff was "probably fit to perform the essential elements of the job."

On July 6, 2011, Plaintiff was working on the Illinois River aboard the Motor Vessel (M/V) Deborah Ann. Plaintiff claims that while he was carrying a wire from a loaded barge to an unloaded barge, the barges suddenly shifted. Plaintiff felt immediate pain in his lower back. Plaintiff did not seek medical care until July 8, 2011.

In August 2011, Plaintiff saw Dr. Gornet. Plaintiff asserts that Dr. Gornet diagnosed Plaintiff with an injury that was not present in 2009. Dr.

Gornet noted that Plaintiff's new MRI showed a new disc herniation that was not on Plaintiff's first MRI.  See Medical Record dated October 6, 2011, Exhibit C, d/e 79, p. 16 ("The large disc herniation was in no way present on his previous films of 10/31/2009 and his increasing severe symptoms correlate with this").

On September 9, 2011, Defendant terminated the employment of Plaintiff and withheld payments of maintenance and cure.

## V. ANALYSIS

Defendant Osage Marine Services, Inc. seeks summary judgment only on Plaintiff's maintenance and cure claim.  Defendant raises the affirmative defense that a seaman who knowingly or fraudulently concealed his illness from the ship owner is not entitled to maintenance and cure.  Defendant also asserts that Plaintiff provides no basis for seeking punitive damages against Defendant on the maintenance and cure claim.

A seaman who becomes ill or is injured while in the service of the ship may bring a claim for maintenance and cure against the ship owner.  Vella v. Ford Motor Co., 421 U.S. 1, 3 (1975).  The duty to provide maintenance and cure arises regardless of the negligence, or lack thereof,  of the ship

owner or seaman and regardless of whether the illness or injury is suffered in the course of the seaman's employment. Vella, 421 U.S. at 4.

Maintenance includes wages, food, and lodging. Atlantic Sounding Co., Inc. v. Townsend, 557 U.S. 404, 413 (2009); see also Fitzgerald v. United States Lines Co., 374 U.S. 16, 20 n. 7 (1963) (under maintenance and cure, the seaman can recover wages to the end of the voyage on which the seaman was injured or became ill). Cure refers to medical expenses. Townsend, 557 U.S. at 413; see also Fitzgerald, 374 U.S. at 20 n. 7 (the seaman can recover medical expenses up to the point at which the seaman becomes incurable). The seaman does not have to recover under his Jones Act or unseaworthiness claims to receive maintenance and cure. West v. Midland Enterprises, Inc., 227 F.3d 613, 616 (6th Cir. 2000).

Although the maintenance and cure doctrine is broad, most of the Circuits recognize some type of affirmative defense to a maintenance and cure claim when the seaman intentionally misrepresented or concealed material medical facts. See, e.g., Sammon v. Cent. Gulf S.S. Corp., 442 F.2d 1028, 1029 (2d Cir. 1971); Deisler v. McCormack Aggregates, Co., 54 F.3d 1074, 1080 (3rd Cir. 1995); Evans v. Blidberg Rothchild Co., 382 F.2d 637, 639 (4th Cir. 1967); McCorpen v. Cent. Gulf S.S. Corp., 396 F.2d 547, 548

(5th Cir. 1968); West v. Midland Enters., Inc., 227 F.3d 613, 617 (6th Cir. 2000); Sulentich v. Interlake S.S. Co., 257 F.2d 316, 320 (7th Cir. 1958); Wactor v. Spartan Transp. Corp., 27 F.3d 347, 352 (8th Cir. 1994); Vitcovich v. Ocean Rover O.N., 106 F.3d 411 (9th Cir. 1997) (unpublished). Generally, when a ship owner requires a seaman submit to a pre-hiring medical examination or interview, and the seaman intentionally misrepresents or conceals material medical facts, the seaman is not entitled to maintenance and cure if the injury is causally linked to the concealed medical condition. See Smith v. Apex Towing Co., 949 F. Supp. 667, 671 (N.D. Ill. 1987), citing Wactor, 27 F.3d at 352. In the Seventh Circuit, the defendant must prove, by a preponderance of the evidence, that the plaintiff (1) knowingly misrepresented or concealed his prior injury from the examining physician; (2) the misrepresentation or concealment was material; (3) the misrepresentation or concealment was relied upon by the defendant; and (4) the plaintiff would not have been hired or permitted to continue to work and remain on the vessel if the true facts had been disclosed. Sulentich, 257 F.2d at 320; but see also, e.g., McCorpen, 396 F.2d at 548 (identifying three elements to the affirmative defense: intentional misrepresentation or concealment of fact; the fact as material to

the employer's decision to hire the plaintiff; and a connection exists between the withheld information and the injury complained of in the lawsuit); Sammon, 442 F.2d at 1029 (applying a subjective test and holding that the concealment of a pre-existing condition during a pre-hiring interview "is fraudulent only if the seaman knows or reasonably should know that the concealed condition is relevant").

Defendant asserts that it is undisputed that Plaintiff concealed his prior low back injuries; that the concealed low back injuries were material to Defendant's employment decision; and that a nexus exists between the previously concealed low back injury and the subsequently alleged low back injury.

Plaintiff responds that questions of fact remain. First, Plaintiff asserts that his subjective belief of his physical condition and ability to perform the job prevents a finding that he intentionally concealed or misrepresented his physical condition. Second, Plaintiff asserts that his failure to mention any earlier back pain cannot be considered material. Plaintiff argues the X-ray report that was part of the pre-employment physical showed listhesis, a probable pars defect, and a significant loss of intervertebral disk height and Defendant still hired him. Finally, Plaintiff

asserts that Defendant has not shown how the possible earlier back injury was the cause of the 2011 injury.

Defendant's Undisputed Material Facts contained no facts pertaining to whether Defendant would have hired Plaintiff had Defendant known of Plaintiff's prior back condition. Defendant relies on <u>Brown v. Parker Drilling Offshore Corp.</u>, 410 F. 3d 166, 175 (5th Cir. 2005) for the proposition that the information is material if the employer asks a specific medical question on the application and that inquiry is rationally related to the applicant's physical ability to perform the job duties.

However, the <u>Brown</u> court followed the defense articulated in <u>McCorpen</u>, which does not require that the ship owner demonstrate that the seaman would not have been employed if the requested disclosure had been made. <u>See</u> <u>also</u> <u>Atlantic Sounding Co., Inc. v. Petrey</u>, 402 Fed. Appx. 939, 941-42 (5th Cir. 2010) (unpublished) (rejecting the argument that the <u>McCorpen</u> defense includes a fourth element requiring that the ship owner show that the company would not have employed the seaman if the disclosure had been made but noting that the ship owner must show that the non-disclosed facts were material to the company's decision to hire him).

Moreover, the Seventh Circuit requires that the defendant demonstrate that the plaintiff would not have been hired or remained employed had the information been known. See Sulentich, 257 F.2d at 320 (wherein the examining physician testified that had the plaintiff disclosed his back problems, he would have been immediately terminated and removed from the ship); see also Smith, 949 F. Supp. at 672 (finding a question of fact remained whether the plaintiff, who was a cook on the ship, would not have been hired had she disclosed her prior back problems where a pre-employment physical and spinal X-ray had been performed; the examining physician testified that he would have performed a more complete examination and recommended limitations had he known the information and the defendant's dispatcher testified she would not have hired the plaintiff had the information been disclosed).

In this case, questions of fact remain whether Defendant would have hired Plaintiff had the disclosure been made. Therefore, the Court does not address the other elements of the defense.

In the Reply, Defendant points to the testimony of Dr. Wagoner, the examining physician, who testified that if Plaintiff had disclosed his prior back condition, further workup would have been warranted:

> Q. All right. Is it fair to say, Doctor, that if Mr. Rekart had provided you with a history that included having back pain, numbness in his legs, chronic low back pain, prior injuries to his back, that type of thing, that it would have raised real concern for you with regard to clearing him as you did to work in a heavy manual labor job?
>
> A. I think it would have at least warranted further workup. Yes, it probably would have delayed until I had at least some further workup clearing him at that time. Yeah, I mean if there had been symptoms, if there had been problems with that, I think it would at least warrant further workup.

Def. Reply, d/e 85-1, Exhibit M, p. 24-25; see also p. 49 (testifying that a pars defect was not necessarily something that would give him cause for concern). Dr. Wagoner was also asked the following question and gave the following answer:

> Q. (By Mr. Fox) All right. So I guess what I'm getting at, Doctor, is the fact that he had this significant history of back injury[,] that he actually saw an orthopedic surgeon for who [sic] described him as having ruptured disks or bulging disks at two levels in his lumbar lumbosacral spine, those would create significant medical concerns for you with regard to feeling comfortable as a physician saying that this man can go do heavy manual labor, correct? You certainly wouldn't have cleared him on the date that you saw him?
>
> A. Yes, that's a true statement.

Id. p. 59.

However, the evidence also shows that, as part of his pre-employment screening, Plaintiff underwent a medical exam that included a back X-ray.

The X-ray noted degenerative changes, listhesis, and pars defect. The X-ray report specifically notes that oblique views or a CT could be obtained to definitively evaluate the findings, but no further evaluation was performed.

Taking the evidence in the light most favorable to Plaintiff, the Court finds summary judgment is not warranted. Defendant has not demonstrated that the hypothetical question presented to Dr. Wagoner was accurate. Moreover, Dr. Wagoner's responses are equivocal as to whether Plaintiff would have been cleared for employment. There are also questions of fact regarding what Defendant knew based on the X-ray taken as part of the employment screening.

Defendant bears the burden of proof on the affirmative defense and must show, for purposes of summary judgment, that no genuine issue of material fact remains. Defendant simply has not provided sufficient evidence to demonstrate, as a matter of law, that Defendant would not have hired Plaintiff had he disclosed the prior information about his back. The evidence provided shows a genuine issue of material fact remains.

Defendant also argues that, notwithstanding Plaintiff's total bar to recovering maintenance and cure under the McCorpen defense, Plaintiff's claim for punitive damages must fail because a ship owner's reasonable

Page **15** of **17**

withholding of maintenance and cure cannot serve as a basis for punitive damages. Def. Motion, d/e 71, p. 14, citing <u>Brown</u>, 410 F. 3d at 177 (noting that punitive damages are warranted where a ship owner does not have a reasonable defense and exhibited callousness and indifference to the seaman).

Punitive damages are available in a maintenance and cure claim for the ship owner's willful and wanton disregard of the maintenance and cure obligations. <u>Townsend</u>, 557 U.S. at 424. Defendant asserts that Plaintiff has no evidence of willful or wanton conduct sufficient to award punitive damages.

Plaintiff did not specifically respond to this argument, although Plaintiff asked the Court to deny the Motion for Partial Summary Judgment. Nonetheless, on this record, the Court cannot find, as a matter of law, that Plaintiff is not entitled to punitive damages.

## VI. CONCLUSION

For the reasons stated, Defendant's Motion for Partial Summary Judgment (d/e 70), is DENIED. The Final Pretrial Conference remains scheduled for January 27, 2014 at 2:00 p.m. The parties are advised to comply with Local Rule 16.1(E) and (F). In addition, the parties shall

submit the proposed Final Pretrial Order, including the agreed set of findings of fact and conclusions of law, by noon on January 24, 2014.

ENTER: December 11, 2013

FOR THE COURT:

                <u>s/Sue E Myerscough</u>
                SUE E. MYERSCOUGH
                UNITED STATES DISTRICT JUDGE